IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11cv227

| | |
|---|---|
| RONNIE BAILEY,        )  | |
| )                                                    | |
| Plaintiff,        )                           | |
| )                                                    | MEMORANDUM AND |
| v.                       )                    | RECOMMENDATION |
| )                                                    | |
| MICHAEL J. ASTRUE, Commissioner   ) | |
| of Social Security,        )         | |
| )                                                    | |
| Defendant.        )                      | |
| _____  ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for social security disability benefits. This case came before the Court on the administrative record and the parties' Motions for Summary Judgment [# 12 & # 14]. The Court **RECOMMENDS** that the District Court **GRANT** the Plaintiff's Motion for Summary Judgment [# 12] and **REMAND** the Commissioner's decision.

I.     **Procedural History**

Plaintiff filed an application for disability benefits on September 20, 2005. (Transcript of Administrative Record ("T.") 72.) Plaintiff alleged that he became

-1-

disabled beginning August 5, 2002. (T. 72.) The Social Security Administration denied Plaintiff's claim, finding that he was not disabled. (T. 52-55.) Plaintiff requested reconsideration of the decision, which was also denied. (T. 49-50.) A disability hearing was then held before an Administrative Law Judge ("ALJ"). (T. 327-48.) The ALJ then issued a decision finding that Plaintiff was not disabled. (T. 14-26.) Subsequently, the Appeals Council denied Plaintiff's request for review of the decision. (T. 3-6.) Plaintiff then timely brought this action seeking review of the Commissioner's decision.

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe impairment that significantly limits his ability to perform basic work-related

functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his past relevant work; (5) whether the claimant is able to perform any other work considering his age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that the claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In his February 24, 2009, decision the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (T. 26.) The ALJ made the following specific findings:

(1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

(2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 5, 2002 through his date last insured of December 31, 2007. (20 CFR 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following severe impairment: degenerative disc disease at L5-S1 with mild involvement of the nerve root. (20 CFR 404.1521 *et seq.*).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b), with the limitation of a sit-stand option. The claimant can lift 20 pounds occasionally and 10 pounds frequently and can sit for six hours out of an eight-hour workday, stand for six hours out of an eight-hour workday, and walk for six hours out of an eight-hour workday.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on September 6, 1960 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured. (20 CFR 404.1563).

(8) The claimant has a least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in the significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from August 5, 2002, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

(T.16-26.)

### VI. Standard of Review

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

V. **Analysis**[1]

A. **The Allegations of Bias and Misconduct on the Part of the ALJ**

Plaintiff makes a number allegations of bias and misconduct on the part of the ALJ. For example, Plaintiff contends that the findings made by the ALJ were "outright malicious," that the ALJ "purposefully misrepresented" the record, that the ALJ "deliberately misrepresent[ed] the record," that the ALJ is "dishonest," and that the ALJ demonstrated an "outright bias" against Plaintiff. (Pl.'s Mem. Supp. Mot. J. Pleadings at pp. 12-13.) In addition, Plaintiff contends that the conduct of the ALJ was "despicable," "disingenuous," and that the ALJ's findings were "downright malicious falsehoods." (Id. at pp. 11-12, 15.)

These are serious allegations of bias and judicial misconduct raised by Plaintiff, which this Court does not take lightly. Plaintiff, however, has demonstrated nothing more than an unfavorable factual finding; he has not demonstrated that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Litkey v. U.S., 510 U.S. 540, 556, 114 S. Ct. 1147, 1158 (1994) (addressing the issue of recusal); see also Keith v. Barnhart, 473 F.3d 782, 788 (7th Cir. 2007); Batton v. Astrue, No. 1:11cv00052, 2012 WL 1067556 (W.D. Va. Mar. 29, 2012); Davis v. Astrue, No. 5:10cv72, 2011 WL

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

3236196 (N.D. W. Va. Jul. 28, 2011); Tanner v. Astrue, No. 8:10cv270, 2011 WL 2313047, at *11 (D.S.C. Apr. 29, 2011). In fact, Plaintiff has not provided this Court with any credible evidence of bias or misconduct and, thus, has not overcome the presumption that the ALJ is unbiased. See Keith, 473 F.3d at 788. Accordingly, the Court finds that Plaintiff's allegations of bias and judicial misconduct are without merit.

The Court, however, reminds counsel for Plaintiff of her obligations under Rule 11. See Fed. R. Civ. P. R. 11(b). Not only are the unsupported allegations that the ALJ, among other things, deliberately misrepresented the record and acted maliciously unprofessional for a member of the bar, they arguably run afoul of Rule 11. The Court **INSTRUCTS** Counsel for Plaintiff that future unsupported allegations of this nature will not be tolerated by this Court and may result in sanctions against her and/or her client. Although counsel for Plaintiff may believe that such allegations are effective legal writing and will persuade this Court to rule in her favor, they have the opposite effect and result in counsel's loss of credibility with this Court. In fact, Plaintiff has prevailed in this case in spite of these statements, not because of them.

## B. The ALJ's Credibility Determination is not Supported by Substantial Evidence in the Record

As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonable be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's

statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity of the claimant's pain and symptoms; (3) factors that predicate or aggravate the claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes in order to alleviate the pain or symptoms; (5) any treatment other than medication that claimant received to alleviate the pain or symptoms; (6) any additional measure that claimant used to relieve the pain or symptoms; (7) any other factors concerning claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

The ALJ's credibility determination must constitute more than a conclusory statement that the claimant's allegations are not credible. SSR 96-7p, 1996 WL

374186 (Jul. 2, 1996). The decision must contain specific reasons for the finding and must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

Here, the ALJ applied this two step process in assessing Plaintiff's statements regarding his symptoms, including his back, leg, and foot pain. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. (T. 23.) The ALJ noted that Plaintiff's stated symptoms included low back pain, right leg and foot pain, leg and feet itching, migraines, poor sleep, poor concentration, and crying spells. (T. 23.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 23.) The ALJ provided specific reasons for why he found Plaintiff's testimony not fully credible. (T. 23-25.)

Plaintiff testified at length about the severity of his pain. (T. 332-42.) The ALJ, however, found that Plaintiff's testimony was not fully credible and found that his back pain did not limit Plaintiff to the extent he testified. (T. 24-25.) In reaching this conclusion, the ALJ emphasized Plaintiff's possible illegal drug use

and narcotic addiction. (T. 23-24) The ALJ noted two anonymous calls reporting that Plaintiff was selling some of his medications for crack cocaine, that he blacked out while driving on one occasion, that the records show that he was not taking some of his medications, and that Dr. Schulorf expressed concerns regarding his narcotic addiction. (T. 23-24.) To the extent that the ALJ made his credibility determination based on his conclusion that the Plaintiff was a drug addict who was selling his pain medications for crack cocaine, such a finding is not supported by substantial evidence in the record.

The ALJ is correct that the record reflects that two anonymous calls were made reporting that Plaintiff was selling his Lortab to obtain crack cocaine. (T. 157, 181, 183.) These reports appear to have been made by his thirteen-year-old daughter to Social Services. (T. 157.) The ALJ, however, neglects to mention that when both reports were made, the Plaintiff was administered a urinary drug screen, which did not indicate illegal drug use. (T. 157, 181, 183.) Plaintiff also denied illegal drug use at the time, and the medical records reflect that he has no history of illegal drug use. (T. 107, 112, 157.) Aside from the calls to Social Services apparently made by his thirteen-year-old daughter, there is no evidence in the record that Plaintiff was using crack cocaine or selling his pain medications to obtain crack cocaine. Moreover, the medical records reflect that Plaintiff was not

an opioid management problem in 2005. (T. 181, 183.) Although in 2006, Dr. Schulhof noted that Plaintiff had developed a narcotic addiction, this was in reference to Plaintiff's possible addiction to his prescription pain medications, not crack cocaine or other illegal drugs. (T. 107, 109) Finally, there is no evidence in the record supporting the conclusion that the incident where Plaintiff blacked out while driving a car with his children in the vehicle was related to illegal drug use. (T. 163-64.)

Upon a review of the entire record before the Court, the Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible because of his alleged illegal drug use and the alleged selling of his pain medication for crack cocaine is not supported by substantial evidence in the record. Although the Commissioner urges this Court to find that any such error was harmless and affirm the credibility determination of the ALJ based on the other evidence in the record upon which the ALJ relied in making his credibility determination, this Court is unwilling to do so. As the Court previously stated, it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. The evidence related to Plaintiff's alleged illegal drug use and the selling of his pain medications to purchase crack cocaine was not one small piece of evidence upon which the ALJ relied, see e.g. Hosey v. Astrue, No. 2:11cv42, 2012 WL 667813

(N.D. W. Va. Feb. 6, 2012), or an alleged error having no bearing on the substance of the decision reached by the ALJ, see Barnes v. Astrue, No. 5:10-cv-189-FL, 2011 WL 1755942 (E.D.N.C. May 6, 2011); rather, the evidence featured prominently in the ALJ's credibility determination, see Gibeau v. Astrue, No. 3:10-802-RMG-JRM, 2012 WL 393408 (D.S.C. Jan. 11, 2012). Moreover, the Court cannot say that the ALJ would have reached the same result notwithstanding this error. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). It is not clear from the ALJ's written decision how prominent a role Plaintiff's alleged illegal drug use and the allegations that he sold his medications for crack cocaine played in the ALJ's decision. If this Court were to exclude from consideration this evidence and then re-weigh the remaining evidence, this Court, not the ALJ, would be making the credibility determination. Although the Commissioner may be correct that the medical evidence and other evidence in the record might be sufficient by itself to support the ALJ's credibility determination, that decision should be left to the ALJ on remand, not this Court.

## VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Plaintiff's Motion for Summary Judgment [# 12], **DENY** the Commissioner's Motion for Summary Judgment [# 14]. The Court **RECOMMENDS** that the District Court

reverse the Commissioner's decision in this case pursuant to Sentence four of 42 U.S.C. § 405(g) and remand the case to the Commissioner for further proceedings consistent with this Order.

Signed: May 29, 2012

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).